### PEOPLE v. GILBERT
#### Opinion of the Court

1. Constitutional Law—Criminal Law—Right to Counsel—Accused—Focus of Investigation.

   An accused must be permitted to consult with his lawyer when the police process shifts from investigatory to accusatory, *i.e.*, when the focus of that investigation is on the accused and its purpose is to elicit a confession from him.

2. Constitutional Law — Criminal Law — Extrajudicial Statements — Custodial Interrogation — Self-Incrimination — Procedural Safeguards.

   Neither the exculpatory nor inculpatory statements of a defendant, stemming from his custodial interrogation, may be used

---

References for Points in Headnotes

[1] 21 Am Jur 2d, Evidence § 313.
[2] 29 Am Jur 2d, Evidence §§ 555–557.
[3] 29 Am Jur 2d, Evidence § 555.
[4] 21 Am Jur 2d, Criminal Law § 390.
   29 Am Jur 2d, Evidence § 555.
[5, 6] 21 Am Jur 2d, Criminal Law §§ 313, **390.**
   29 Am Jur 2d, Evidence §§ 555–557.
[7] 21 Am Jur 2d, Criminal Law § 313.
   29 Am Jur 2d, Evidence § 555.
[8, 9] 53 Am Jur, Witnesses § 862.
[10] 30 Am Jur 2d, Evidence § 1170 *et seq.*

unless the prosecution demonstrates that effective procedural safeguards were employed to secure to defendant his constitutional privilege against self-incrimination.

3. CRIMINAL LAW—CUSTODIAL INTERROGATION—DEFINITION.

Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

4. CRIMINAL LAW—REPORTING OF CRIME—ACCUSATION.

Reporting of a crime to the police is not ordinarily sufficient of itself to transform any conversation with a possible suspect into an official accusation.

5. CRIMINAL LAW — STATUTORY RAPE — INTERROGATION — CONSTITUTIONAL RIGHTS.

Investigation of a statutory rape complaint and the very nature of the charge itself were such that the accusatorial finger had already been pointed specifically by complainant at defendant and to no one else and, being the prime and only suspect, defendant was entitled to be informed of his constitutional rights to remain silent and to have legal counsel before he was interrogated by a detective regarding that complaint.

6. CRIMINAL LAW—CUSTODIAL DURESS—SUFFICIENCY—CONSTITUTIONAL RIGHTS.

Sufficient custodial duress existed when a detective advised defendant to get into a police patrol car to discuss a statutory rape complaint made against him to require that defendant be warned of his constitutional rights to remain silent and to have an attorney present during the questioning.

DISSENTING OPINION
QUINN, P. J.

7. CRIMINAL LAW—EVIDENCE—EXTRAJUDICIAL STATEMENTS—ADMISSIBILITY.

*Detective's testimony regarding defendant's extrajudicial admission that he was with complainant on the night when she was raped was properly admitted where defendant conceded that he was not in custody when he made that statement, that he was not therefore entitled to be warned of his constitutional rights and the police investigation had reached neither the adversary nor accusatory stage against him since he was not formally charged until three months after he made his admission.*

8. WITNESSES—CREDIBILITY—APPEAL AND ERROR.

*A trial court sitting without a jury is the trier of fact and must determine the credibility of witnesses and normally an appellate court will not review questions of credibility.*

9. WITNESSES—CREDIBILITY—DETERMINATION—COURTS.

*Trial judge's oral decision, when read in its entirety, did not show that he tested witnesses' credibility by using collateral information not germane to the lawsuit, that he used information based on personal information known only to him as the trier of fact, or that his determination of a witness' credibility depended on the status of that person in the community, and defendant's contentions to the contrary were based on excerpts taken out of the decisional context.*

10. CRIMINAL LAW—EVIDENCE—PRESUMPTION OF INNOCENCE.

*The presumption of innocence is overcome when there is no doubt the crime charged was committed and there is ample evidence to establish beyond a reasonable doubt that defendant committed it.*

Appeal from Lenawee, Rex B. Martin, J. Submitted Division 2 October 7, 1969, at Lansing. (Docket No. 5,883.) Decided February 4, 1970.

Wallace Gilbert was convicted of statutory rape. Defendant appeals. Remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney, for the people.

*Edward J. Engle, Jr.,* for defendant on appeal.

Before: QUINN, P. J., and BRONSON and T. M. BURNS, JJ.

BRONSON, J. At a nonjury trial in the Lenawee County Circuit Court, Wallace Gilbert, the defend-

ant, was convicted of statutory rape.[1]  He was sentenced to a term of one year and six months to ten years in prison.  Defendant then filed a motion for a new trial, which was denied.  From this verdict, defendant appeals.

The alleged rape occurred on January 1, 1967. . Some seven months later the complainant went to the police and charged defendant with having raped her.  At this time the complainant was some seven months pregnant.

On July 28, 1967 David Snyder, a detective with the Lenawee County sheriff's department, saw defendant driving through Cement City.  Detective Snyder followed defendant to his home and there questioned him in regard to the allegations made by the complainant.  On July 28, 1967 detective Snyder was in Cement City investigating a crime not connected with defendant.  He was in uniform and driving a semi-marked patrol car.  Detective Snyder testified that there had been several previous attempts to contact defendant at his home; that he had talked with defendant's mother on one occasion and with his father several times.  On July 28, 1967 detective Snyder followed defendant to his home and into the driveway, walked to the car in which defendant and his brother were sitting and "advised him that I wanted to talk to him and asked that he come back to the patrol car with me which he did." Detective Snyder then "told him that we were investigating a complaint that had been made * * * and proceeded to ask him if he knew anything about the incidents as stated."

Defendant's defense was alibi.  At trial, he claimed that he had not been with complainant on the night in question.  Over objection of defense counsel detective Snyder was allowed to testify, for purpose of

---

[1] MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).

impeachment, that in the conversation on July 28, 1967 defendant had admitted being with complainant on January 1, 1967.

In *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977), the United States Supreme Court stated:

"Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' * * * by gathering information from witnesses and by other 'proper investigative efforts.' * * * We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession— our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

In *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974), the United States Supreme Court stated:

"This was the spirit in which we delineated, in meaningful language, the manner in which the constitutional rights of the individual could be enforced against overzealous police practices. It was necessary in *Escobedo,* as here, to insure that what was proclaimed in the Constitution had not become but a 'form of words,' *Silverthorne Lumber Company, Inc.,* v. *United States* (1920), 251 US 385, 392 (40 S Ct 182, 183; 64 L Ed 319, 321), in the hands of government officials. And it is in this spirit, consistent with our role as judges, that we adhere to the principles of *Escobedo* today.

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards ef-

fective to secure the privilege against self-incrimination."

The Court in *Miranda* then went on to state that:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]
\* \* \*

---

"[4] This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused."

I am unable to say with conviction, after reading this record, that the requirements of *Escobedo* and *Miranda* are not applicable under the facts here presented.

It is urged that when sheriff's detective Snyder "advised" defendant to walk back to the patrol car the scope of the investigation had not narrowed so greatly as to have shifted the process "from investigative to accusatory".

I cannot accept that argument. Ordinarily the reporting of a crime to the police is not sufficient in and of itself to transform any conversation with a possible suspect into an official accusation. However, the nature of the charge involved here is such that the accusatorial finger had most assuredly been pointed, and pointed specifically, at Wallace Gilbert and no one else. Thus Gilbert was the prime and as far as this Court knows the *only* suspect. There was but one accused and that one was Wallace Gilbert. The unwed complainant, already seven months pregnant at the time, had presented herself at the Lenawee County sheriff's office and named Wallace Gilbert as the rapist.

Under the circumstances peculiar to this case, when the sheriff's detective "advised" Gilbert that he wanted to talk to him in his police car and in-

formed defendant of the accusation made against
him, there was sufficient custodial duress at that
time to require adherence to the principles laid down
in *Escobedo* and *Miranda*.[2] That the formal com-
plaint did not issue until November 3, 1967 does not
alter the fact that the accusatorial finger had already
begun by July 28, 1967 to point at the defendant.
Defendant was not told by detective Snyder that
he had certain constitutionally-protected rights,
among which were the right to remain silent and
the right to have counsel present. Due to the pos-
sible taint attached to the information received by
detective Snyder on July 28, 1967 and the weight
given by the trial judge to detective Snyder's testi-
mony,[3] I would remand for a new trial, excluding

---

[2] See Kamisar, *"Custodial Interrogation" within the Meaning of
Miranda,* in Criminal Law and the Constitution—Sources and Com-
mentaries (1968), p 341, where Professor Kamisar states: ·

"I think the Supreme Court has made it fairly plain that if a man
is not in custody, is not really restrained, no warning has to be given.
The function of the *Miranda* warnings is to dispel the coercion in-
herent in police custodial surroundings and the interrogation process,
to *relieve* the suspect of anxieties generated when he is torn from a
familiar environment and thrust into a police-dominated atmosphere,
*or to relieve him of the typically lesser but still substantial anxieties
created when he is restrained 'on the street' by uniformed officers and
questioned there or in the squad car."* (Emphasis added.)

[3] The trial court, in its opinion, found:  ·  ·

"In our case, it was apparent to the court that the defendant knew
about all the rebuttal witnesses except Mr. Snyder.

                    *          *          *

"The principal concern of the court here is whether or not they
should have been called as part of the people's principal case. David
Snyder could not have been. In fact if the defendant hadn't taken
the stand, Mr. Snyder could not have testified. If the defendant had
admitted making the statement Mr. Snyder attributed to him, Mr.
Snyder could not have testified. Here the statement claimed to have
been made would not have had a bearing on the merits of the case
that the Supreme Court rejected testimony in the Kennedy case did
[sic]. Mr. Snyder's testimony was valuable in adding weight to the
other testimony tending to impeach the defendant."

Upon completion of the taking of testimony the trial judge stated:
"I am convinced of this as I read these notes and as I listened to
these witnesses *there are two witnesses here and two witnesses alone
who I am willing to believe,* who were telling it to the best of their

testimony by detective Snyder as to the conversation
between the detective and defendant on July 28,
1967. See *People* v. *Marsh* (1968), 14 Mich App
518.

   T. M. Burns, J. concurred.


   Quinn, P. J. (*dissenting*). On the basis of *Miranda*
v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16
L Ed 2d 694, 10 ALR3d 974), and *Escobedo* v. *Illi-
nois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d
977), the majority opinion holds that it was revers-
ible error to admit the testimony of detective Snyder
for impeachment purposes. If Snyder's testimony
was inadmissible under the *Miranda* and *Escobedo*
standards, it was not admissible for impeachment
purposes, *People* v. *Hosack* (1969), 16 Mich App
552, and I would concur in reversal.

   However, defendant concedes that he was not in
custody when he made the statement related by Sny-
der and that *Miranda, supra,* does not apply. On
this record, which discloses an offense January 1,
1967 that was reported to the police in July, 1967,
and the purported inadmissible statement made dur-
ing a casual investigation July 28, 1967 with no
formal charge against defendant until November
3, 1967, I am unable to say that proceedings against
defendant had reached the adversary or accusatory
stage on July 28, 1967. In my view, neither *Miranda*

---

ability the whole truth of this evening. Those two witnesses were
Letha Kelley and Dave Snyder.
                    *     *     *
   "I'm convinced that David Snyder was telling the truth when he
said he talked to the defendant and he said that sometime on or
about January first he had been out with the complaining witness.
   "I am convinced that the complaining witness and Evelyn and Tim
and the defendant at times deliberately did not tell us the truth from
the witness stand." (Emphasis added.)

nor *Escobedo, supra,* applies to this case and Snyder's testimony was properly admitted.

In addition, defendant contends that the trial judge employed an improper method in determining the credibility of witnesses and that he failed to give the proper weight to the presumption of innocence.

With respect to the first error alleged in the preceding paragraph, defendant concedes that a trial court sitting without a jury is the trier of fact and must determine the credibility of witnesses, and that normally an appellate court will not review questions of credibility. In this instance, however, defendant contends that the trial judge determined the credibility by using a method which employed as its test information collateral and not germane to the lawsuit in question, employed as its test information based on personal information known only to the trier of fact, and a method that indicated a predisposition of the trier of fact to a particular finding of credibility depending on the community status of the witness involved. In support of this contention, defendant cites excerpts from the oral decision of the trial judge given from the bench at the conclusion of the trial. These excerpts taken out of context lend some credence to defendant's position, but when the oral decision is read in its entirety, it does not support defendant's position. I find no error in this regard.

Further, defendant says the proof of the prosecution was not sufficient to overcome the presumption of innocence, and therefore the trial judge failed to give that presumption its proper weight. On this record, there is no doubt that the crime charged was committed, and the record contains ample evidence to establish beyond a reasonable doubt that defendant committed it. This overcomes the presumption.

I would affirm the trial court.