PEOPLE v. MILLMAN.

1. CRIMINAL LAW—RECORD—PRELIMINARY EXAMINATION—PROBABLE CAUSE—EVIDENCE.

On review of conviction and sentence for common-law conspiracy to obstruct justice, determination that motion to quash information because probable cause was not shown at preliminary examination is precluded by absence from record of testimony taken at such examination.

2. SAME—CONSPIRACY TO OBSTRUCT JUSTICE—SEPARATE TRIAL.

Whether or not defendant was erroneously denied a separate trial on charge of common-law conspiracy to obstruct justice is not before Supreme Court for review where it does not appear from record that motion for separate trial was made by defendant and the reasons therefor.

3. SAME—SEPARATE TRIAL—DISCRETION OF COURT.

The matter of granting a motion or demand for a separate trial by one jointly indicted with others is discretionary with the trial court.

4. Same—Supreme Court—Questions of Fact—Evidence.

    The Supreme Court does not determine questions of fact in criminal cases where there is a conflict of evidence.

5. Same—Conspiracy to Obstruct Justice—Evidence.

    In prosecution for common-law conspiracy to obstruct justice consisting of scheme to "fix" witnesses in trial of four men for armed robbery which was effective to result in acquittal of the four men, evidence showing not only the presence of defendant at various conferences of his alleged coconspirators but also his active participation, friendship for and association with others involved *held,* sufficient to permit jury to find defendant guilty beyond a reasonable doubt.

6. Same—Reading Information in Introductory Statement—Conspiracy—Saving Question for Review.

    Reading part of information in prosecutor's introductory statement to jury in prosecution of a criminal conspiracy did not constitute error where no objection was made at the time, since nothing is presented for review; common fairness to trial court and the people requiring that objections be made to procedure claimed to be erroneous.

Appeal from Recorder's Court for the City of Detroit; Gordon (Arthur E.), J. Submitted January 14, 1943. (Docket No. 91, Calendar No. 41,609.) Decided June 16, 1943. Rehearing denied September 7, 1943.

Samuel Millman was convicted of conspiracy to obstruct justice. Affirmed.

*George S. Fitzgerald,* for appellant.

*Walter M. Nelson* and *Isaac M. Smullin,* for appellant on amended petition for rehearing.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *A. Floyd Blakeslee* and *Daniel J. O'Hara,* Assistants Attorney General, and *Ralph E. Helper,* Assistant Prosecuting Attorney, for the people.

Chandler, J. The appellant herein, Samuel Millman, was convicted by a jury in the recorder's court

for the city of Detroit of the charge of conspiracy to obstruct justice, and was sentenced by said court to be committed to the State prison of southern Michigan for a term of not less than two years, nor more than five years. From such judgment he appeals to this court, alleging numerous errors on the part of the trial court.

To detail the facts as disclosed by the record would be a mere repetition of what has been said by Chief Justice Boyles in *People* v. *Robinson, ante,* 167. Both Robinson and the defendant herein, together with others, were charged with the common-law offense of conspiring to obstruct justice, were tried together and both duly convicted. The two cases present practically the same questions for our determination.

Appellant's statement of questions involved are 11 in number. We will discuss them, where we deem discussion necessary, in the order stated.

1. Did the court err in refusing to quash the information against defendant?

Appellant in his brief contends, "There was not probable cause shown at the preliminary examination," and therefore his motion to quash the information should have been granted.

None of the testimony taken on the preliminary examination appears in the record. Neither does the record show a motion to quash the information on behalf of appellant prior to plea of not guilty, trial and conviction. Even if such motion had been timely made, the absence of the testimony taken at the examination from the record precludes us from determining that said motion was erroneously denied. See *People* v. *McCrea,* 303 Mich. 213.

2. Did the court err in refusing to grant a separate trial to defendant?

We have searched the record in vain in an effort to ascertain if a demand or a motion for separate

trial was made by defendant and the reason or reasons for such demand or motion. In no place does counsel for defendant in his statement of facts, or the argument advanced in support of this question, disclose that such a motion or demand was made. Counsel in his argument contends, ''It is conceded that it is discretionary with the court whether or not a defendant, jointly indicted with others, is granted a separate trial. When the accused is put in jeopardy, however, by the refusal of a separate trial, this amounts to an abuse of discretion.''

We determine that this question is not before us for review.

3. Did the court err in failing to direct the jury to find the appellant not guilty at the conclusion of the people's proofs?

Counsel for defendant contends, ''The record is barren of any positive testimony that defendant Millman acted in concert, or that he was implicated in any way other than being present at the several places where the other defendants were present.''

It is not the province of this court to determine questions of fact in criminal cases where there is a conflict of evidence. There is testimony in this case which, if believed by the jury, as it evidently was, conclusively establishes the guilt of defendant beyond a reasonable doubt.

The defendant admits his presence at meetings between his alleged coconspirators, but his counsel contends that there is no testimony that he actively participated in a conspiracy, if one existed, and that the testimony only establishes Millman's presence, and assumed acquiescence in said conspiracy, and that that is not sufficient under the law to justify a verdict of guilty.

The record discloses conferences between defendant, police officers Brouillet and Farrish, and Bern-

stein and Silverston, alleged coconspirators, upon several occasions immediately following the arrest of Holtzman, Cooper, Jacobs and Feldman, the alleged holdup men, and the passing of $300 from Silverston to the police officers in the presence of all of the above named, said officers being given this money for the purpose of "fixing" the testimony of the witnesses in the Robinson robbery case in order to have the charge of robbery dismissed. It further appears that at the time this money was paid $700 more was promised to said police officers if the testimony in the robbery case was "fixed." In case the testimony could not be fixed, the police officers were to "kick back" said $300 to appellant, Bernstein and Silverston. Farrish testified that the $300 was received by him; that from this money, he spent $50 for drinks and other things, gave $50 to Brouillet, kept $50 for himself and later at the request of defendant returned to him the balance of $150.

This testimony was evidently quite conclusive to the minds of the jury that not only was defendant a participant in this unlawful conspiracy but that he was a willing and active one; that he did what he could to bring to a successful conclusion this scheme, or plan to corruptly "fix" for the men charged with robbery the testimony of the witnesses against them.

We are persuaded by a reading of the entire record that there was ample testimony upon which to base a verdict of guilty against defendant.

The defendant had always been what might be termed a "small-time" racketeer. He admitted that the only business in which he had ever been engaged was that of participating in the conducting of handbooks in and about the city of Detroit; that

he had an interest in two handbooks and that two of the four persons charged with the robbery had been employed by his partner, and that another one of the four had been his friend and associate since childhood. We can readily see how the jury arrived at the conclusion that defendant was an active participant in the conspiracy, and that there was a motive for such participation.

The jury are the judges of the facts, they saw and heard defendant, as well as the other witnesses in the case, and were in a position to determine the credibility and weight to be given to their testimony. We are satisfied that there was ample testimony from which the jury could find defendant guilty beyond a reasonable doubt of the conspiracy to obstruct justice as charged.

4. Did the court err in allowing the witness Brouillet the privilege of refusing to answer questions on the grounds that it might incriminate him on cross-examination by defense counsel?

5. Did the court err in allowing the witness Farrish the privilege of refusing to answer questions on the grounds that it might incriminate him on cross-examination by defense counsel?

We find it unnecessary to review these two questions as they have been answered and determined by the opinion of this court in the case of *People* v. *Robinson, supra.*

6. Did the court err in refusing to strike from the testimony and instructing the jury to disregard the question of assistant attorney general on cross-examination of Samuel Millman, which was in substance as follows: "Are you a purple gangster, or a member of the purple gang?"

7. Did the court err in refusing to grant a mistrial to the defendant, Samuel Millman, on the re-

quest of defense counsel following the cross-examination of Samuel Millman as to his alleged membership in connection with the so-called purple gang?

8. Did the court err in allowing the assistant attorney general in charge of the prosecution to recall the defendant Martin B. Robinson to the witness stand for further cross-examination, after the said defendant, Martin B. Robinson, had rested his case and after defendant, Sam Millman, had testified and rested his case?

9. Did the court err in refusing to strike from the testimony and instructing the jury to disregard certain inflammatory and prejudicial arguments made by the assistant attorney general in charge of the prosecution, said remarks being in substance as follows:

"That the jury bear in mind that people like the defendants on trial were the type who corrupted the Detroit police department and other law-enforcing agencies and that the police should "crack down" on these defendants and that the court room was the place where said "cracking down" should take place and that the jury should see that city was rid of people of the type of the defendants and the city should be kept clean of gambling too."?

The questions raised by the foregoing assignments of error were involved in *People* v. *Robinson, supra,* and were there determined to be without merit.

10. Did the court err in allowing the assistant attorney general in charge of the prosecution certain charges of the information which were not proven by the people?

11. Did the court err, further, in its failure to strike from the information certain charges which were not proven by the people?

The opening statement of the prosecutor does not appear in the record in the instant case, but is set forth in the record in the companion case of *People v. Robinson, supra*. The record there shows that no objection was interposed by counsel for either defendant to the reading of the information by the ·attorney for the people, nor does either record disclose any motion by counsel for the defense to strike any of the charges from the information. Hence, nothing is here presented for review. Common fair-' ness to the trial court and to the people, as well as the fundamental theory of appellate jurisdiction in reviewing a lower court decision, demands that ob-· jections be made to procedure claimed to be erroneous.

The conviction and sentence are affirmed.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.