PEOPLE *v.* TUBBS

1. CRIMINAL LAW—CONSTITUTIONAL LAW—INTERROGATION—SILENCE —PRESENCE OF COUNSEL.

A suspect must be informed of his constitutional right to remain silent and to have retained or appointed counsel present during interrogation and the giving of his extrajudicial statement but this rule does not require a further warning to a suspect that his interrogation will cease at his request (US Const, Am 5).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—INTERROGATION.

Interrogation of a suspect who has been silent must cease when he indicates in any manner before or during interrogation that he wishes to remain silent since at this point he has shown his intention to invoke his Fifth Amendment privilege and any statements taken after that privilege has been invoked are necessarily products of compulsion, subtle or otherwise (US Const, Am 5).

3. CRIMINAL LAW—CONSTITUTIONAL LAW—INTERROGATION.

That interrogation of a suspect must cease whenever he indicates his desire to remain silent is a rule to govern the conduct of such proceedings and does not require that a suspect be specifi-

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law § 314 *et seq.*
[4] 53 Am Jur, Trial § 156 *et seq.*
[5] 53 Am Jur, Trial §§ 212, 214.
[6, 8] 5 Am Jur 2d, Appeal and Error § 545.
[7] 21 Am Jur 2d, Criminal Law § 333 *et seq.*
[9] 53 Am Jur, Trial § 944 *et seq.*
[10] 5 Am Jur 2d, Appeal and Error § 891.
[11] 4 Am Jur 2d, Appeal and Error § 508.
[12] 21 Am Jur 2d, Criminal Law § 357 *et seq.*
[13] 21 Am Jur 2d, Criminal Law § 314.
[14] 41 Am Jur 2d, Indictments and Information § 55 *et seq.*
[15, 16] 39 Am Jur, Trial § 38.

cally informed that his interrogation will cease at his request since at this point he has already been advised of his right to remain silent.

4. WITNESSES — CONFLICTING TESTIMONY — CREDIBILITY — EVIDENCE — SUFFICIENCY — QUESTION OF FACT.

Resolution of questions involving conflicting testimony, sufficiency of evidence, except where there is no evidence at all, and the credibility of witnesses is within the sole province of the jury.

5. CRIMINAL LAW — DEFENSES — INSANITY — WITNESSES — EXPERT WITNESSES — CONFLICTING TESTIMONY — QUESTION OF FACT.

A defendant's insanity, when in issue, is to be determined solely by the trier of fact where conflicting evidence on this issue is presented; hence, question of whether defendant was insane when he committed murder was for the jury where two experts testified that defendant was suffering from various mental disorders and a third expert said defendant was sane.

6. VENUE—CHANGE OF VENUE—CRIMINAL LAW—PRETRIAL PUBLICITY —MOTIONS—TIMELINESS.

A motion for a change of venue because of pretrial publicity in the news media must be timely filed and this issue cannot be raised for the first time on appeal.

7. CRIMINAL LAW—CONFESSIONS—PRESENCE OF PARENTS—RIGHT TO COUNSEL—ADMISSIBILITY.

A suspect is not entitled to have his parents present during his voluntary confession where he does not request that they be present.

8. TRIAL—CRIMINAL LAW—INSTRUCTIONS TO JURY—OBJECTIONS.

Any objections to a trial judge's instructions to the jury must be raised when the instructions are given or those objections are waived.

9. TRIAL — CRIMINAL LAW — SUPPLEMENTAL INSTRUCTIONS — OBJECTIONS.

The giving of supplemental instructions which merely reiterate the content of the initial instructions is not error where defense counsel approved the initial instructions when given an opportunity to object to them (GCR 1963, 516.2).

10. CRIMINAL LAW—ADDITIONAL INSTRUCTIONS—OBJECTIONS—COURT RULE.

Objections to additional or supplemental instruction given while a jury is deliberating must be made in a motion for a new

trial and such objections cannot be raised for the first time on appeal (GCR 1963, 516.4).

11. JURY—COMPOSITION OF JURY—OBJECTIONS—WAIVER—PEREMPTORY CHALLENGE.

Any objection to the composition of a jury is waived if an objecting party fails to exhaust his peremptory challenges or afterwards expresses his satisfaction with the jury. .

12. CONSTITUTIONAL LAW—CRIMINAL LAW—SELF-INCRIMINATION—WAIVER.

A defendant may not be required to take the stand and give testimony but if he voluntarily takes the stand in his own behalf, he waives his constitutional privilege against answering self-incriminating questions material to the issue (US Const, Am 5; Const 1963, art 1, § 17).

13. TRIAL—CRIMINAL LAW—WITNESSES—DEFENDANT'S TESTIFYING—STRATEGY.

Defendant's action in taking the stand against his own better judgment, in compliance with strategy urged by his counsel, does not constitute sufficient grounds for reversal of defendant's conviction nor does such unsuccessful strategy establish that defense counsel was incompetent.

14. WITNESSES—INDORSED WITNESSES—INDICTMENT AND INFORMATION—DUTY OF PROSECUTOR.

Witnesses other than *res gestae* witnesses need not be indorsed on a criminal information; however, if a prosecutor does indorse such a witness, he must produce that witness in court and the defendant may rely on his duty to do so.

15. WITNESSES—INDORSED WITNESSES—FAILURE TO PRODUCE—DUE DILIGENCE.

A prosecutor may be excused from producing a non-*res gestae* witness whose name was indorsed on a criminal information where he shows due diligence in attempting to locate that witness and the court can properly conclude therefrom that the indorsed witness's attendance could not be secured.

16. WITNESSES—INDORSED WITNESSES—FAILURE TO PRODUCE—DUE DILIGENCE.

Trial court's determination of whether a prosecutor has exercised due diligence in attempting to produce an indorsed witness should not be overturned on appeal unless there is a clear abuse of discretion.

Appeal·from Kent, Claude A. Vander Ploeg, J.
Submitted Division 3 February 4, 1970, at Grand
Rapids.   (Docket No. 6,816.)   Decided March 25,
1970.

Eugene Tubbs was convicted of second-degree
murder.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,*
Prosecuting Attorney, and *Wesley J. Nykamp,*
Chief Appellate Attorney, for the people.

*Gordon Doherty,* for defendant.

Before: HOLBROOK, P. J., DANHOF and ROOD,* JJ.

HOLBROOK, J.   Defendant was tried in the circuit
court of Kent County on September 9, 1968 before
the Honorable Claude Vander Ploeg, was found
guilty of murder in the second degree by the jury;
and was sentenced to life imprisonment.   MCLA
§ 750.317 (Stat Ann 1954 Rev § 28.549).

The facts surrounding the murder are:

On July 14, 1967 defendant registered at a hotel
in Grand Rapids.   Defendant planned to return to
the room later after celebrating his birthday.   At
about 9:30 p.m., accompanied by his fiancee, Rosie
Hardges, defendant returned to the hotel room.   An
argument ensued which grew more violent finally
terminating in defendant strangling the victim to
death with a lamp cord.   Defendant then filled the
bathtub with water and placed the body face down
in the tub.

Defendant left the hotel and later returned to Miss
Hardges' house where he told her parents that she

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

had left him at the theatre, and he had not seen her since. He filed a missing persons report with the Hardges family and then helped them look around Grand Rapids for the victim.

On the morning of July 15, 1967, defendant's parents drove him back toward Great Lakes Naval Training Center, where he was stationed at the time. While driving on the Illinois Interstate, defendant told his parents that he thought something had happened to Miss Hardges and that he wanted to tell the police. They stopped outside Waukegan, Illinois, and defendant surrendered to the Illinois State Police.

The defendant raises eight issues on appeal which are restated and dealt with in order.

(1) Whether defendant's confession to the Illinois authorities was in conformity with the requirements of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602; 16 L Ed 2d 694).

Defendant contends that he was not fully advised of his constitutional rights prior to making a confession to the Illinois State Police officer as required by *Miranda*. The waiver of his rights was embodied in the trial court record:

"I, Eugene Tubbs, hereby state that I have been advised by Corporal Donald D. Trent, who has identified himself as an Illinois State Police Officer that I have a right to remain silent and that I need not say anything to him or to any other law enforcement officer if I do not desire, and that I need not answer any questions, that in the event that I answer any questions the answers that I give can be and may be used as evidence against me. I have further been advised by the officer that I have a right to have a lawyer present at this time and before or during any questioning hereafter by any law enforcement officer. I have further been advised that if I cannot afford a lawyer to be present to be [*sic*] before or

during any questioning, a lawyer will be provided for me. Having been advised as above and understanding that I have these rights, I hereby freely and voluntarily waive them. Dated at Illinois Interstate 294 this 15th day of July, A.D. 1967. Signature Eugene Tubbs, witness' statement. Mine, Corporal Donald D. Trent and Trooper Williams, 916." Trial Transcript, Vol 1, pp 12–13.

Defendant contends that he was not fully advised of his constitutional rights because he was not advised that interrogation would cease at his request. In support of this position defendant cites *People* v. *Jourdan* (1968), 14 Mich App 743. The brief opinion of this Court was as follows:

"Per Curiam. Defendant was tried by a jury on April 12 and 13, 1967, and convicted of breaking and entering, MCLA § 750.110 (Stat Ann 1968 Cum Supp § 28.305). Thereafter, he was sentenced. His appeal attacks the admission of his oral confession at trial.

This attack is based on the following facts: Defendant was questioned by the police October 5, 1965, at which time he was advised of his right to remain silent, that anything he said could and would be used against him in court, that he was entitled to an attorney and an attorney would be furnished to him if he could not afford to employ one. Defendant was not advised that interrogation would cease at his request and that he was entitled to counsel during interrogation, as required by *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602; 16 L Ed 2d 694). *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772; 16 L Ed 2d 882), made *Miranda* applicable to trials commenced after June 13, 1966.

"Although the trial court determined defendant's confession voluntary and admissible after a *Walker* hearing, this court is bound by the *Miranda* doctrine. *People* v. *Whisenant* (1968), 11 Mich App 432. Reversed and new trial ordered."

The people argue that *Miranda* does not require the authorities to specifically advise a person in custody before questioning that interrogation will cease at his request. Likewise the people assert that *Jourdan* misconstrued the ruling of *Miranda* because the *Miranda* holding does not require that the accused be specifically and separately advised before he is questioned that interrogation will cease at his request.

*Miranda* as interpreted in *People* v. *Whisenant, supra,* required defendant to be warned of his constitutional rights including the right to have counsel, retained or appointed, present during the questioning and the giving of his statement, but did not rule so as to require a further warning that the interrogation would cease at his request. After a careful reading of *Miranda* we conclude that the constitutional warnings given to the defendant prior to the making of his confession satisfied the requirement of *Miranda, supra.*

*Miranda,* at 384 US 473, 474, reads in part:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, *the interrogation must cease. At this point* he has shown that *he intends to exercise his Fifth Amendment privilege;* any statement taken *after* the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." (Emphasis supplied.)

We conclude that the foregoing reference to the fact that whenever an individual *indicates* his desire to remain silent, the questioning must cease, is a rule to govern the conduct of the proceedings and is not the setting out of a special warning requirement. The subject's warning requirements at that

point concerning his right to remain silent have already been given.

We consider the *Jourdan* per curiam decision as dictum insofar as it states: "Defendant was not advised that interrogation would cease at his request \* \* \* as required by *Miranda*," because it was unnecessary in deciding the case to rule on this aspect of the matter.

*People* v. *Woods* (1969), 382 Mich 128, appears to have set the rule in Michigan to confine *Miranda* to its precise command. By our decision herein, we apply *Miranda* as we understand its precise command.

(2) Whether the jury was precluded from finding that defendant was sane at the time of the homicide because defendant produced two medical witnesses at trial whose testimony conflicted with that of the medical witness called by the people on the issue of sanity.

Defendant contends that the evidence submitted to the jury was overwhelming that he was mentally incompetent and that the jury disregarded such preponderance of the evidence in arriving at their verdict. Defendant cites neither evidence nor authority for his argument.

At trial, three medical witnesses testified concerning defendant's mental condition. The two experts testifying for defendant stated that in their opinions he was suffering from various mental disorders. The expert witness called on behalf of the people testified that, in his opinion, defendant was sane. Thus evidence was presented on both sides of the sanity issue and the expert testimony was conflicting. It was a jury question and the jury determined that defendant was sane and found him guilty. It

was not error for it to do so.[1] As stated in 2 Gillespie, *Michigan Criminal Law and Procedure*, § 630, p 816:

"It is the sole province of the jury to pass upon conflicts in the testimony. The question of the sufficiency of the evidence is likewise for the jury, unless there is no evidence at all upon material points. * * * It is the province of the jury to determine the credibility of all witnesses, and it may believe one witness as against many. The weight of testimony does not necessarily depend upon the number of witnesses."

More importantly and more specifically, the Supreme Court has held, in *People v. Krugman* (1966), 377 Mich 559, 563 (141 NW2d 33), that the issue of the accused's sanity is to be determined solely by the jury when conflicting evidence is presented:

"The jury is the ultimate judge of defendant's sanity at the time of the crime, and in this case, since it had before it evidence of defendant's behavior and state of mind upon the basis of which it could have found defendant sane at that time, it was not bound by the expert testimony of the doctor."

Based upon the above cited authorities, there was no error in the finding by the jury that defendant was sane at the time of the homicide.

(3) Whether the trial judge committed error by permitting the trial to continue in Grand Rapids

---

[1] *People v. Petrosky* (1938), 286 Mich 397, 282 NW 191; *People v. Placido* (1945), 310 Mich 404, 17 NW2d 230; *People v. Riddle* (1948), 322 Mich 199, 33 NW2d 759; *People v. Hancock* (1950), 326 Mich 471, 40 NW2d 689; *People v. Loudenslager* (1950), 327 Mich 718, 42 NW2d 834; *People v. Camak* (1967), 5 Mich App 655, 147 NW2d 746. In even more specific terms, the Michigan Supreme Court has held that "[t]he weight to be given to the testimony, where conflicting, should be left to the jury." *People v. Henseler* (1882), 48 Mich 49, 51, 11 NW 804. See also *People v. Stewart* (1910), 163 Mich 1, 127 NW 816; *People v. Millman* (1943), 306 Mich 182, 10 NW2d 885.

after the potential jurors were allegedly exposed to what defendant now asserts constituted prejudicial pretrial publicity in the news media, where the record discloses no motion was made by defendant for a change of venue or a continuance at the appropriate time.

Defendant alleges error by the trial judge in permitting the trial to proceed in Grand Rapids after the potential jurors had allegedly been exposed to what defendant now argues constituted prejudicial pretrial publicity in the news media. Defendant cites no authority in support of this proposition.

There is no indication that defendant ever filed a timely motion for change of venue. Indeed there is no indication on any of the material before this court that there was any publicity or local prejudice at any stage of the proceedings.

Under such circumstances, defendant was not entitled to raise a motion for change of venue based on pretrial publicity at any later stage of the trial; *People v. Fitzsimmons* (1914), 183 Mich 284 and *People v. Havey* (1968), 11 Mich App 69. Neither may defendant raise this issue for the first time on appeal. *People v. Omell* (1968), 15 Mich App 154.

(4) Whether defendant's confession was rendered inadmissible because his parents were not in the room with him when he made the confession, although defendant had been with his parents until immediately before making his confession and they were never farther away than the next room, and defendant never requested the presence of his parents during the giving of his confession.

Defendant argues that he should not be held accountable for what he told the prosecutor in Illinois while under great mental strain especially when he was denied the counsel and comfort of his

parents who were present and available nearby and his parents were not given time to engage an attorney for him.

In addition to the above argument having no basis in law, and no such basis is alleged in support thereof, it has no basis in fact. During the time when defendant actually made the statement, his parents were available in the adjoining room. It also appears that at no time did defendant ever request the presence of his parents.

In like manner, defendant's allegation that defendant's parents were not given time to engage an attorney for him is devoid of merit. There is absolutely no indication that anyone wished to retain or was prevented from obtaining an attorney for any reason whatsoever at the time the statement was given.

Defendant's fourth assignment of error is completely without legal or factual basis.

(5) Whether the trial judge committed error in advising the jury when it returned for questions and further instructions after the charge had been given, where defendant made no objection to any of the additional instructions of the court either at the time or in his motion for a new trial.

Defendant makes no specific allegation of error in this portion of the proceedings, and he cites no authority in support of his argument. The record discloses that the jury returned on two occasions for questions or further instructions after being charged. On the first occasion, the trial judge answered a question for the jury and on the second occasion, he clarified his answer to the earlier question and reiterated part of his original charge at the jury's request. Defendant stated that he was satisfied with the original charge, and he did not object to any answers or instructions given to the

jury on the two occasions. Nor did defendant raise any objections to these answers and additional instructions of the court in his motion for a new trial, filed September 13, 1968.

It is well established that as a general proposition any objections to the trial judge's instructions to the jury must be raised at the time the instructions are given or the objections are waived. *People v. Cassiday* (1966), 4 Mich App 215, 144 NW2d 676; *People v. Dexter* (1967), 6 Mich App 247, 148 NW2d 915; *People v. Keys* (1968), 9 Mich App 482, 157 NW2d 419; *People v. Brown* (1968), 13 Mich App 222, 163 NW2d 829. More specifically, in *People v. Keiswetter* (1967), 7 Mich App 334, this Court held that where "supplemental instructions" to the jury were only a reiteration of the content of the initial instructions of the court and counsel for defendant approved the initial instructions, when given an opportunity to object in accord with GCR 1963, 516.2, there was no error.

The people cite GCR 1963, 516.4 as authority for the proposition that defendant is now precluded from raising objections to any "supplemental instructions" on appeal by his failure to object to them in his motion for a new trial. The rule, entitled "Additional Instruction," reads as follows:

"While the jury is deliberating, the court may in its discretion further instruct the jury in the presence of or after notice to counsel. *Objections thereto shall be made in a motion for new trial.*"

On the basis of this authority defendant is barred from raising objections to any of the jury instructions for the first time on appeal.

(6) Whether the trial judge committed error by allowing a jury composed of ten women and two men to be impaneled and sworn, where defendant made no objections to the qualifications of the jurors at

the time and where defendant did not exhaust his peremptory challenges.

Defendant alleges that the trial judge committed error by allowing a jury composed of ten women and two men to be impaneled and sworn to hear his case. No authority is cited in support of this proposition.

It also appears, that neither party exhausted their peremptory challenges.

The law is well settled that any objection to the composition of the jury is waived if the objecting party fails to exhaust his peremptory challenges or afterwards expresses himself as satisfied with the jury. *People* v. *Rose* (1934), 268 Mich 529; *People* v. *Lockhart* (1955), 342 Mich 595; *People* v. *Lambo* (1967), 8 Mich App 320.

Defendant's sixth assignment of error is without merit.

(7) Whether the trial judge committed error in permitting the trial to continue after defendant took the stand upon the advice of his counsel to testify in his own behalf.

Defendant argues that "the judge should not have allowed the trial to go on when the defendant's attorney was telling defendant to say yes to every question." Stated in more meaningful language, the defendant apparently alleges that the trial judge committed error in permitting the trial to continue after defendant voluntarily took the stand to testify in his own behalf. Defendant cites no authority to support this proposition and fails to disclose any factual basis for this assignment of error.

It is fundamental under the Fifth Amendment of the United States Constitution and Article I, Section 17 of the Michigan Constitution that the accused in a criminal prosecution may not be required to take the stand and give testimony. It is also equally clear

that if the accused voluntarily takes the stand to testify in his own behalf "he waives his constitutional privilege against answering self-incriminating questions material to the issue." 1 Gillespie, Michigan Criminal Law & Procedure § 392, pp 475–476. *People* v. *Lloyd* (1967), 5 Mich App 717.

Even if defendant took the stand against his own better judgment as a strategy urged by his counsel, as defendant now suggests was the case, this is not sufficient grounds for reversal. This court, in *People* v. *Kaczor* (1968), 14 Mich App 724, 726, 165 NW2d 899, 900 held:

"No such claim of incompetence can be established from this record and no strategic position taken nor decision made during the pretrial and trial stages can be made the basis for a claim of denial of counsel due to incompetence solely because the strategy was not successful. This ground is without merit."

There is no merit in defendant's seventh assignment of error.

(8) Whether the trial judge committed error in excusing the people from producing Trooper Williams, Illinois State Police, who was one of the officers who arrested defendant, where Corporal Trent, Trooper Williams' partner and the other arresting officer, was produced by the people and testified as to all the events surrounding defendant's arrest, and Trooper Williams was on a hunting trip in Minnesota and could not be reached by mail or telephone at the time of trial.

After the jury was impaneled, a discussion between court and counsel ensued concerning a number of endorsed witnesses who had been excused or were unavailable. The following is a portion of that discussion pertinent to this assignment of error:

"*Mr. Stevens:* All right, there is also an Illinois trooper by the name of Williams whom we have tried to reach and are informed by another Illinois trooper, Larry, that he is in the state of Minnesota hunting [*sic*] without a telephone. However, the other trooper will after a fashion indicate what transpired between this trooper and the respondent and his parents. We are not able to produce this trooper this week.    *    *    *

"*Mr. Jarosz:* I would make an objection on the records your Honor, as to the fact there are three troopers absent from Illinois as to having some contact with the respondent at the time he appeared at that particular post in Waukegan.

"*The Court:* Well, your statement is on the record and also yours and we will go on with the trial and see how the matter is and how the evidence does develop."

The rule as to the prosecutor's duty after endorsement was clearly stated in *People* v. *Kern* (1967), 6 Mich App 406, 410:

"Page was not a *res gestae* witness and therefore the prosecutor was not required to endorse his name on the information. See *People* v. *Davis* (1955), 343 Mich 348. *However, if the prosecutor does endorse the name of such a witness he must secure his presence in court and the defendant is entitled to rely upon the prosecutor's duty to produce him.* See *People* v. *Whittemore* (1925), 230 Mich 435; *People* v. *Lummis* (1932), 260 Mich 170. Nevertheless, the prosecutor may be excused from producing that witness if he makes a showing of due diligence." (Emphasis supplied.)

In this case the prosecutor did make a showing upon which the trial judge could correctly conclude that the attendance of the witness could not be secured. Such a conclusion is within the sound discretion of the trial court and should not be overturned

on appeal unless there was a clear abuse of discretion which defendant has not demonstrated. *People* v. *Boyles* (1968), 11 Mich App 417. See also *People* v. *Woodward* (1969), 21 Mich App 549.

Defendant's eighth assignment of error is without merit.

Affirmed.

All concurred.