PEOPLE *v.* PANTOJA

OPINION OF THE COURT

1. ARREST—PROBABLE CAUSE.

Probable cause existed for the defendant's arrest where the arresting police officers knew from their own observations that a man had been seriously injured from what looked like a knife wound, the officers had been told that the defendant's wife had been keeping company with the victim and that the defendant had been in a bar, behind which the victim was found, the officers, when talking to the defendant, noticed what looked like blood on the defendant's shirt, and the defendant admitted fighting with the victim.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 16.
[2-5] 29 Am Jur 2d, Evidence § 555 *et seq.*
  Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

2. Criminal Law—Warning of Rights—Investigation of Crime.

A person must be advised of his constitutional rights when he is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way; however, the constitutional necessity to advise a person of his rights does not prevent investigation of crime.

3. Criminal Law—Warning of Rights—Custodial Interrogation.

Police officers did not have to advise the defendant of his constitutional rights even though they questioned him about the slaying with which he was later charged where the police probe was still in the investigatory stage, the defendant was not in custody at the police station, but was in a bar's storeroom and the defendant's freedom was not deprived in any significant way as shown by the facts that defendant talked freely and voluntarily to the officers, that the defendant was not threatened, detained or placed under arrest or in custody and that the police officers, after talking to the defendant, left the defendant to go about his normal activities, advising him that the police would contact him later.

4. Criminal Law—Warning of Rights—Right to Cease Interrogation.

A defendant does not have to be advised that police interrogation will cease at any time he requests its cessation before his statement can properly be taken.


Dissent by Bronson, J.

5. Criminal Law—Warning of Rights—Custodial Interrogation —Accusatorial Stage.

*A warning of constitutional rights was necessary when police officers questioned the defendant, later charged with the murder with which the questions dealt, in a bar's storeroom, the police had information that the defendant's wife had been with the victim, and that the defendant had been in the bar, behind which the victim was found, the defendant was, at the time of the questioning, the prime and only suspect of the crime, and only the defendant and the officers were present during the questioning, because the accusational stage of the investigation had been reached and because the isolated questioning entailed sufficient custodial duress.*

Appeal from Kent, Claude Vander Ploeg, J.   Submitted Division 3 May 6, 1970, at Grand Rapids. (Docket No. 6309.)   Decided December 9, 1970.

Eleuterio Pantoja was convicted of manslaughter. Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Wesley J. Nykamp,* Chief Appellate Attorney, and *Donald A. Johnston, III,* Assistant Prosecuting Attorney, for the people.

*George T. Krupp,* for defendant on appeal.

Before: HOLBROOK, P. J., and BRONSON and MUNRO,* JJ.

MUNRO, J.   After a jury trial in the Circuit Court of Kent County the defendant was found guilty of manslaughter.   He appeals from such conviction on the grounds that the trial court erred in admitting certain statements and admissions of the defendant at the time of trial and that he was illegally arrested.

The facts in this case are: that in the late evening hours of Saturday, April 15, 1967, an injured man named Estel Ray Caldwell was found behind the 503 Bar located on South Division Street in Grand Rapids by the owner of the bar; that at or about 11:30 p.m. the owner of the bar notified the police and shortly thereafter two police officers arrived. They found Caldwell lying in the alley in a pool of blood and ordered an ambulance, and Caldwell was taken to the hospital.   The officers then talked to the owner of the bar who informed them that Cald-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

well had been keeping company with defendant's wife and that she and the defendant had been present in the bar that evening.

After advising the bar owner to call them if the defendant returned, the police went to the hospital to check on the victim's condition and there observed on Caldwell what appeared to be a stab wound. While at the hospital they received a phone call from the owner of the bar telling them that the defendant had returned and the police then returned to the bar. They asked the defendant to step into the bar's adjoining kitchen and storeroom and there talked to him. At first the defendant denied that he had been in a fight with Caldwell and the police, noticing blood on his shirt, asked him to open his coat which he did, after asserting that the blood was his nephew's. After the officers noticed blood on his hand, defendant then told the police officers that he had a fight with Caldwell over Caldwell's relations with defendant's wife but denied stabbing Caldwell. The police frisked the defendant and searched the interior of his car parked in front of the bar. During this time the defendant was not advised of his constitutional rights and the police then told the defendant that the police department would contact him later. The police then went to the hospital where they were informed that Caldwell was dead. They returned to the bar and were advised by the lieutenant to take the defendant to the police station, which they did. At the police station the defendant was first advised of the *Miranda*[1] warnings and then questioned by a detective to whom the defendant then made a statement that was substantially the same as the one he had

---

[1] *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

made earlier to the police officers at the bar. The defendant was then placed and remained in custody all day Sunday and on Monday morning another detective interrogated the defendant and obtained a third statement from him. Defendant was arraigned at 2:00 p.m. on Monday.

The trial court held that the first statement made to the police officers at the bar and the second statement made at the police station early Monday morning which was reduced to writing were admissible and ruled that the third statement made on Sunday was inadmissible because the arraignment was delayed for an unreasonable time in order to obtain a statement from the defendant.

With regards to the issue that defendant was unlawfully arrested defendant contends that mere suspicion does not constitute probable cause. It appears from an examination of the record in this case that the officers knew from their own observations that a man had been seriously injured from what looked like a knife wound and that they had been told that the defendant had been in the bar and that the defendant's wife had been keeping company with the victim. When they talked to the defendant they could see what looked like blood on his shirt and the defendant admitted to having had a fight with the deceased. It seems clear from the facts that the officers had probable cause to believe that a felony had been committed; the arrest which was made following the defendant's statement to the detective at the police station was proper.

The defendant's contention that the trial court erred in admitting the statement made to the police officers at the bar and the subsequent statement made to the detective at the police station are predicated on defendant's assertion that the case of

*Miranda* v. *Arizona,* requires that the police officers, before interrogating defendant at the bar, should have advised him of his rights as set forth in *Miranda.* It is admitted that no *Miranda*-type warning was given at that stage of the investigation. The defendant, however, overlooked that the *Miranda* decision does not prevent investigation of crime. The United States Supreme Court in *Miranda,* at p 477 said:

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination *when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way.*    *    *    *

"Our decision is not intended to hamper the traditional function of police officers in investigating crime." (Emphasis supplied.)

On the facts here involved there was no question that the defendant was not in custody at the police station but was in fact in the storeroom kitchen at the bar. Further, at that point the police inquiry was still in the investigatory stage. It remains to be determined whether he was otherwise deprived of his freedom of action in any significant way. The record indicates that the defendant talked freely and voluntarily to the officers and that he was not detained, threatened or placed under arrest or in custody. In fact, the police officers, after interrogating defendant with regards to the matter they had been called to the bar to investigate, left the defendant free to go about his normal activities, advising him the police department would contact him later, and the police officers returned to the hospital. It was not until they had returned from the hospital, having found that the injured man

died, that they took the defendant into custody and to the police station.

It is this Court's ruling that from the record here before us the police officers at the bar were performing an investigation in discussing this matter with the defendant. In addition, the conversation between the police officers and the defendant at the bar, complained of by the defendant, lasted but a very short time. Under the facts here existing the Court finds that at this stage the defendant was not under custodial interrogation. In that regard see *People* v. *Gilbert* (1967), 8 Mich App 393.

With regard to the defendant's allegation of error relating to the statement given to the detective at the police station, the record in this case indicates that the defendant was interviewed by the detective, commencing at 1:15 a.m. on April 15, 1967, and was lodged in the county jail at 2:07 the same morning. The record further clearly indicates that the defendant was given the *Miranda* warnings and advised that he had a right to remain silent, that he didn't have to talk to the officer if he didn't want to, that anything he said could be used for him or against him in a court of law at a later date should a charge be brought against him, that he was entitled to have an attorney of his own choosing, that if he was unable to provide for an attorney the court would provide one for him free of charge, and that he may have this attorney by his side at the time of questioning. The defendant indicated he didn't need an attorney and was willing to discuss the matter with the detective.

Defendant now claims that he was not informed that interrogation would cease at any time he requested it, and claims that *Miranda,* supported by

*People* v. *Jourdan* (1968), 14 Mich App 743, requires a reversal of the trial court's decision.

The statement in the *Jourdan* case which appears to require such advice has recently been ruled on by this Court in the case of *People* v. *Tubbs* (1970), 22 Mich App 549, and was there held to be *dicta* insofar as requiring such a warning before the taking of a statement; the *Tubbs* case is authority for the fact that *Miranda* does not require such a warning. In that regard, as referred to in the *Tubbs* case, the Supreme Court of this state in *People* v. *Charlie Lee Woods* (1963), 382 Mich 128, has determined that the rule in Michigan is to confine the *Miranda* case to its precise command.

In the case here at issue the warning given to the defendant by the detective before proceeding to take his statement early Sunday morning complies with the provisions of the *Miranda* case.

The reasons advanced by defendant for error being without merit, the decision of the trial court is affirmed.

Holbrook, P. J., concurred.

Bronson, J. (*dissenting*). I am unable to agree with the decision reached by my colleagues regarding the failure of the officers to provide the defendant with the *Miranda* warning upon questioning him at the bar.

Although the defendant was not detained for a substantial period of time, it is quite clear that the defendant was isolated during the period of interrogation. The record clearly reveals that the accusatorial finger had indeed been pointed specifically at Eleuterio Pantoja. Pantoja was the prime and only suspect with respect to the incident which resulted in the death of Estel Ray Caldwell.

Under the circumstances, I conclude that the isolated questioning provided sufficient custodial duress to require adherence to the principles laid down in *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974). See *People* v. *Gilbert* (1970), 21 Mich App 442. Since the officers failed to provide defendant with the *Miranda* warnings, I would remand for a new trial, excluding testimony by the officers regarding the conversation with the defendant at the bar.