*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORTEZ WORD,

Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 350622
Wayne Circuit Court
LC No. 18-007783-01-FC

Before: LETICA, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant, Cortez Word, appeals his jury trial convictions of one count of assault with intent to murder ("AWIM"), MCL 750.83; two counts of armed robbery, MCL 750.529; one count of possession of a firearm by a convicted felon ("felon-in-possession"), MCL 750.224f; and four counts of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b(1). Word was sentenced, as a third-offense habitual offender, MCL 769.11, to 15 years to 35 years' imprisonment each for his AWIM and armed robbery convictions, 6 years to 10 years' imprisonment for his felon-in-possession conviction, and two years' imprisonment for each of his felony-firearm convictions. We affirm.

## I. BACKGROUND

This case arises out of an armed robbery and a shooting. The victims, KW and JD, decided to purchase a gun. They contacted a mutual friend, Stephan Little, who agreed to sell them a gun and arranged for the purchase to occur at a house "[o]n Moross [Road] and Roxbury" Street in Detroit, Michigan. When the victims arrived on the evening of July 26, 2018, KW saw Word and another man who KW did not know standing outside of the house. The man who KW did not know directed the victims to stand by a vehicle that was parked on Roxbury Street. The victims complied. Word then "came around the corner," approached the victims, and asked them how much money they had with them. After KW responded, Word pointed a handgun at KW and demanded the money. The victims both threw money onto the ground. Word then searched KW's pockets and removed three cell phones. Word also demanded that the victims remove their shoes, and the victims complied. Word then told the victims to put their shoes on and to "start running."

-1-

When KW was about 15 feet away from Word, he heard a gunshot and realized that he had been shot in the back. Law enforcement was contacted. While investigating the scene, officers found a shell casing for a .45 caliber handgun, and an eyewitness described the shooter as "a black male, approximately 5'8['] to 5'11['], wearing a white shirt and dark colored pants."

On August 27, 2018, Detroit Police responded to a report of "armed people" standing outside of a house on Moross Road. During a search of the house, a .45 caliber handgun was discovered on a couch. Testing of the gun revealed that it matched the shell casing found at the scene. During the execution of a search warrant, officers found a medical invoice, which was addressed to Word and dated July 18, 2018, in the house. KW was shown a photographic lineup consisting of 30 men, including Word. KW identified Word as the man who shot and robbed him. In October 2018, Little was interviewed by police, and he implicated Word. Word was arrested and charged with one count of AWIM, two counts of armed robbery, one count of felon-in-possession, and four counts of felony-firearm.

Trial commenced in February 2019. Members of law enforcement, Little, and KW testified for the prosecution.[1] Little testified that he "referred" the victims to Word after they asked Little about purchasing a gun. Little testified that he saw the victims arrive on July 26, 2018, and that he saw the victims and Word walk around the corner. Little later heard one gunshot come from "[r]ight around the corner" as he was getting out of his girlfriend's vehicle and preparing to enter a house on Moross Road. According to Little, Word "came around the corner" and told Little to go into a house. Word then told Little that he had "shot him," but Little did not know who Word was talking about and did not think that Word was serious. Little testified that he noticed that Word had several cell phones and the .45 caliber handgun he was supposed to sell in his possession at the time. Word was convicted as charged and was sentenced to terms of imprisonment. This appeal followed.

## II. ANALYSIS

## A. PROSECUTORIAL ERROR

Word argues that he was denied a fair trial because the prosecutor denigrated defense counsel and made improper comments that undermined Word's presumption of innocence by vouching for Little. We disagree.

"In order to preserve an issue of prosecutorial [error], a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because that did not occur here, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain,

---

[1] Neither JD nor the eyewitness appeared at trial or testified at trial. The jury was read missing-witness instructions with respect to JD and the eyewitness.

forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id*. at 763. "We will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's [error]." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

"A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *Id*. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64.

## 1. DENIGRATING DEFENSE COUNSEL

Word argues that the prosecutor improperly denigrated defense counsel when the prosecutor argued that defense counsel was "100 percent wrong" and "1,000 percent wrong." It is well established that "a prosecuting attorney may not personally attack defense counsel," *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), or "suggest that defense counsel is intentionally attempting to mislead the jury," *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (quotation marks and citation omitted). In this case, however, the prosecutor did not personally attack defense counsel or suggest that she was attempting to mislead the jury. Rather, the prosecutor was responding to defense counsel's argument that Word was innocent and that Word was the victim of a "set up" by Little. The prosecutor argued as follows during rebuttal:

> [Defense counsel] wants you to believe that there were two set-ups. First, [JD and KW] were set-up by . . . Little. That's the first set-up.
>
> * * *
>
> And that second set-up is for . . . Little to come in here, sit on that witness stand, and now set-up . . . Word to take the fall for his, for . . . Little's impropriety in being the middleman.
>
> So, not one set-up, two set-ups. But she's wrong. She's 100 percent wrong. She's 1,000 percent wrong. And I'll tell you why.
>
> This picture right here. Even if . . . Little's hands were dirty, if they've got some chocolate frosting on there, it doesn't negate the fact that chocolate frosting is all over . . . Word's hands, and all over his face, ladies and gentlemen.

Thus, when reading the argument in context, it is clear that the prosecutor was offering arguments to rebut defense counsel's closing argument and theory of the evidence, as opposed to denigrating defense counsel. Furthermore, the jury was instructed that the prosecutor's arguments were not evidence and that they were the only judges of the facts. Jurors are presumed to follow their instructions. See *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Thus, Word has not shown plain error affecting his substantial rights.

## 2. VOUCHING FOR A WITNESS

Next, Word argues that the prosecutor improperly bolstered Little's credibility. "A prosecutor may not vouch for the credibility of his [or her] witnesses by suggesting that he [or she] has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). A prosecutor may, however, argue from the facts in evidence that a witness is worthy of belief. *Dobek*, 274 Mich App at 66. In defense counsel's closing argument, she argued that Little was not credible because he did not immediately report Word to law enforcement and because Little only told the police that Word shot KW in order to keep himself out of trouble. During rebuttal, the prosecutor argued as follows:

> Little made his statement to the police in October . . . . So, to believe [defense counsel], . . . Little is the one who is throwing . . . Word under the bus. But she said that didn't happen until October. Cortez Word was identified in September, ladies and gentlemen, by [KW]. There was no set-up of . . . Word. Not at all. [KW] identified . . . Word in September—on September 18th of 2018. Roughly two months from the shooting.

This argument did not amount to improper credibility vouching. Rather, instead of vouching for Little, the prosecutor merely referenced evidence that Word had already been identified as the perpetrator by KW when Little implicated Word. Therefore, we conclude that the prosecutor's remarks were a proper response to Word's theory of the case that Little was not a credible witness and had "set up" Word, see *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004), and were a proper credibility argument for the jury's consideration, see *Dobek*, 274 Mich App at 66. Importantly, at no point did the prosecutor imply that he had special knowledge that Little was testifying truthfully. Rather, the prosecutor simply pointed out that Word had already been identified when Little spoke to the police. Moreover, even if Word could establish that the comments amounted to improper bolstering, the jurors were instructed that the prosecutor's arguments were not evidence, that they were the only judges of the facts, and that they must decide which witnesses they believed. As already stated, jurors are presumed to follow their instructions. See *Gayheart*, 285 Mich App at 210. Thus, Word has failed to establish plain error affecting his substantial rights.[2]

---

[2] To the extent that Word is attempting to argue cumulative error based on the prosecutor's alleged errors, the argument is waived because Word cites no authority in support of the argument. *People v Hanna*, 223 Mich App 466, 470; 567 NW2d 12 (1997). Moreover, even if the argument was not waived, it would lack merit given that Word has failed to establish plain error affecting his substantial rights with respect to the alleged errors.

## B. SUFFICIENCY OF THE EVIDENCE

Word argues that his armed robbery conviction "as it relates to [JD], who did not testify," was not supported by "legally sufficient evidence[.]" We disagree.

"Due process requires that the evidence show guilt beyond a reasonable doubt in order to sustain a conviction." *Unger*, 278 Mich App at 222. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, "this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

The "armed robbery" statute, MCL 750.529, provides:

> A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony[.]

The "robbery" statute, MCL 750.530, provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony[.]

> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

In *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007), this Court articulated the elements of armed robbery:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [Footnote omitted.]

-5-

Word argues that there was insufficient evidence that JD "was put in fear or was assaulted[.]" An assault is

> made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery. The first type is referred to as an attempted-battery assault, whereas the second is referred to as an apprehension-type assault. As such, an assault can occur in one of two ways. Moreover, a battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person. [*People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (quotation marks and citations omitted).]

"Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). "Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required." *People v McGhee*, 268 Mich App 600, 623; 709 NW2d 595 (2005).

In this case, Word had a gun in his hand when he approached the victims. According to KW, Word placed a clip in the gun and asked how much money the victims had with them. KW testified that he had over $100 on his person and that, after he responded to Word, Word pointed the gun at KW and demanded the money. According to KW, Word was a few feet away from him when this occurred, and JD was in close proximity to KW. KW, who was "a little" afraid, threw the money onto the ground. KW testified that he provided the money to Word despite not wanting to do so. Word then searched KW's pockets and took his cell phones. According to KW, Word did not "go through" JD's pockets because JD had emptied the contents of his pockets onto the ground. Based on Word's instructions, the victims removed their shoes. According to KW, Word then instructed the victims to put their shoes back on and "to take off running." KW and JD complied with Word's instructions. Not long thereafter, KW heard a gunshot and realized that he had been shot.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that Word put JD in fear or assaulted him. Indeed, JD was in close proximity to KW when Word pointed the gun at KW. Additionally, JD emptied his pockets and removed his shoes based on Word's instructions and fled the scene when he was provided with the opportunity to do so. Word also fired the gun as JD and KW were running away from the scene. According to KW, he was about 15 feet away from Word when this occurred, and KW agreed that JD was with him when he was shot. Although Word suggests that the failure of JD to testify should negate the armed robbery conviction regarding this victim, we disagree. It is well settled that "[t]he weight of testimony does not necessarily depend upon the number of witnesses." *People v Tubbs*, 22 Mich App 549, 557; 177 NW2d 622 (1970) (quotation marks and citation omitted). Furthermore, we do not second-guess jury determinations regarding the weight of the evidence or the credibility of the witnesses. *Unger*, 278 Mich App at 222. In this case, the jury clearly found the testimony of KW to be credible because it convicted Word of armed robbery with respect to JD. The jury did so despite being instructed that it was permitted to infer that JD's "testimony would have been unfavorable to the prosecution's case." Accordingly, the evidence presented at trial was sufficient

to establish beyond a reasonable doubt that Word committed the crime of armed robbery against JD.

Affirmed.

/s/ Anica Letica
/s/ Michael J. Riordan
/s/ Thomas C. Cameron