*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JASON CHRISTOPHER VERSLUIS,

Defendant-Appellant.

UNPUBLISHED
August 24, 2023

No. 362019
Kent Circuit Court
LC No. 21-000630-FC

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 25 to 50 years' imprisonment for the CSC-I count and 10 to 22 years' imprisonment for each count of CSC-II, to be served concurrently. For the reasons stated in this opinion, we vacate defendant's CSC-I conviction and remand for a new trial on that charge.

## I. BACKGROUND

This case arises out of disclosures of sexual assault from two child-complainants, AE and NE. At the time of disclosure, defendant was dating NE and AE's mother. Defendant would pick the children up from daycare when their mother had to work. The children disclosed to their father that defendant was touching them when he picked them up from daycare. Specifically, both AE and NE testified at trial that defendant would touch their vagina and buttocks with his hands while wearing gloves.[1] On this basis of this testimony, defendant was convicted of two counts of CSC-II for unspecified sexual touching against AE and NE. Defendant does not challenge these

---

[1] Around the time of the disclosures, the children's mother and father had a breakdown of their informal custody arrangement, leading the father to file motions regarding parenting time that were denied.

-1-

convictions on appeal. Instead, defendant argues that multiple errors were committed in connection with his CSC-I conviction.

The amended felony information charged defendant with CSC-I for one instance of penile-anal sexual penetration. Defendant was bound over on this charge based on NE's testimony at the preliminary examination that once, when she was on her stomach on a living room couch, defendant pulled down her pants and underwear, after which she "felt skin where [her] butt is." NE further testified at the preliminary examination that she felt defendant moving up and down and that something, "a single thing," was touching between her buttocks. In her opening statement at trial, the prosecutor told the jury that it would hear NE testify about this incident.

As noted, NE testified that defendant touched her butt and vagina with his hands. NE testified that on one occasion defendant put his hands between the middle of her buttocks:

> Q. So if we're talking about a butt—it's a different thing to talk about, but you've got cheeks, right? And then they come together. There's like a crease in the middle; is that right?

> A. Yes.

> Q. Do you agree with me? Okay. So would he touch the cheeks part?

> A. Yeah.

> Q. Okay. Would he do this with his hands or something else?

> A. With his hands.

> Q. Okay. And what about anytime in the middle part of the cheeks?

> A. Once.

> Q. Was this also with his hands or something else?

> A. With his hands.

The prosecutor then asked, "Was this also with his hands or something else," and NE answered, "With his hands." The prosecutor then began asking NE about an incident she described in the forensic interview when defendant got on top of her and touched her skin. NE recalled telling the interviewer about a time that defendant got on top of her, but she believed she had clothes on. NE explained that the skin contact happened because she had shorts on. After NE could not remember what part of defendant's body was against her skin, the prosecution began to read from NE's forensic interview:

> Q. . . . . Is it his private part?

> A. I don't know.

*Q.*  Okay.  When you talk[ed] to [the forensic interviewer], you said that you could see that—you could see [defendant's] privates, and you said that you called it his front.  Do you remember saying that?

*A.*  No.

*Q.*  Okay.  And you said that your butt could feel his privates; do you remember that?

*A.*  No.

*Q.*  And she asked you where could you feel it, and you said in the middle.

*A.*  Yes.

*Q.*  That's right?  Okay.  And when we're talking about the middle, are we talking about what I kind of said earlier, the middle of the cheeks?

*A.*  Yes.

*Q.*  What do we use the middle part for?

*A.*  To use the bathroom.

*Q.*  Okay.  And when [defendant] was doing this, did he have his clothes on or off or something different?

*A.*  I don't know.

*Q.*  Do you remember saying that you could hear him taking his belt off, that you saw him take his belt off?

*A.*  Yes.

*Q.*  Then you told [the forensic interviewer] that he took his pants down and his underwear down?

*A.*  I can't remember that.

After this exchange, the parties had a sidebar with the trial court.  The prosecutor resumed direct examination and asked NE if she remembered making specific statements at the preliminary examination.  As with the forensic interview, the prosecutor was attempting to refresh NE's memory of the alleged incident of penile-anal penetration, and, once again, NE struggled to remember her past disclosures.  In response, the prosecution read from the preliminary examination transcript to question NE about the incident she described occurring on a living room couch:

*Q.*  Okay.  And then she asked you about one time when he touched you under your clothes downstairs.  Do you remember talking about that?

*A.* No.

*Q.* So was there a time that it happened in one of those downstairs living rooms?

*A.* Yes.

*Q.* Okay. And this time around, you were asked about how you were laying on the couch? Do you remember that?

*A.* Yes.

*Q.* And that time you said you were on your tummy?

*A.* Yes.

*Q.* Okay. That's right?

*A.* Yes.

*Q.* And that time you were asked that if he pulled your pants down, and you said down to your knees; do you remember that?

*A.* No.

Q. Did you have your pants pulled down?

*A.* No.

Q. Is this where you were saying earlier you had shorts?

*A.* Yes.

*Q.* And they were still on?

*A.* Yes.

*Q.* Okay. What about underwear, did you have underwear, was that still there or was that removed?

*A.* Still there.

*Q.* Okay. And then you were asked what happened after that, and you said that felt skin. Do you remember that?

*A.* No.

After this exchange, NE and the jury were excused for a break. The trial court told the prosecutor that she could not continue reading NE's statements from the forensic interview or

preliminary examination into the record, but she could ask open-ended questions. The trial court also stated that NE's prior statements could not be used as substantive evidence, except as prior inconsistent statements she made under oath at the preliminary examination, citing MRE 801. The trial court explained that only one statement thus far had met this criteria. At the preliminary examination, NE testified that defendant pulled her pants and underwear down to her thighs. However, NE contradicted that statement at trial when she testified that defendant did not pull down her pants, and instead touched her under her shorts. After the break, the prosecution continued questioning NE, but made no further reference to the forensic interview or preliminary examination.

Beyond AE and NE's testimony, the prosecution presented two other-acts witnesses: women who testified about instances during their childhood in which defendant sexually assaulted them. Defendant's half sister testified that she reported defendant because of incidents in which she was awoken by defendant rubbing himself against her when she was about 10 years old. The other witness testified that, when she was 12 years old, she fell asleep at a party and woke up to defendant kissing her back. Defendant groped her chest, butt, and vagina through her clothing. Defendant had pleaded guilty to charges related to both of these instances.

The prosecution also presented evidence seized from defendant's house, including latex gloves, work gloves, and a diary. The diary included an entry describing defendant's excitement when he did not have deviant thoughts toward children present at a family function. Finally, the prosecution presented statements defendant made to the police in which he denied touching the girls, but explained that, given his history, he told the girls to get off his lap when they were playing video games with him.

After the prosecution concluded its case, defendant made a motion for a directed verdict of acquittal for the CSC-I count, for failure to establish the penetration element. The trial court denied this motion, and defendant was convicted of both CSC-I and CSC-II.

Defendant now appeals.

## II. DISCUSSION

Defendant argues that the trial court erred by permitting the prosecution to read statements from the forensic interview and preliminary examination without laying the proper foundation to refresh NE's recollection. We agree.[2]

---

[2] We disagree with the prosecution that defendant failed to preserve this issue at trial such that plain-error review applies. "In order to properly preserve an issue for appeal, a defendant must raise objections at a time when the trial court has an opportunity to correct the error . . . ." *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (quotation marks and citation omitted). "The purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice." *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997).

MRE 612 permits a party to use a writing or object to refresh the memory of a witness. In order to lay a proper foundation, "the proponent must show that (1) the witness's present memory is inadequate, (2) the writing could refresh the witness's present memory, and (3) reference to the writing actually does refresh the witness's present memory." *Genna v Jackson*, 286 Mich App 413, 423; 781 NW2d 124 (2009). "[T]he purpose of refreshing is to awaken the memory, not to impeach or contradict the witness." *People v Thomas*, 359 Mich 251, 262; 102 NW2d 475 (1960). If the proponent wishes to refresh the witness's memory, the proponent may offer the writing to the witness to read silently or the jury may be removed for the writing to be read aloud when the circumstances require it. *Id*. at 262-263. Further:

> It is error to permit the prosecution on a criminal trial, against the objection of the [defendant], under pretense of refreshing the recollection of a witness, but where there is no occasion for doing anything by way of refreshing his recollection, to read to him while on the stand, and in presence of the jury, his evidence given on a previous occasion, and then ask him whether, after having heard it read, he recollected certain facts stated in it. [*Id*. at 263 (quotation marks and citation omitted).]

The prosecution did not lay a proper foundation to refresh NE's memory. NE stated that she did not remember statements that she made at the forensic interview and preliminary examination. However, in response to this, the prosecution did not confirm that NE's memory was inadequate and did not ask whether silently reading or listening to her statements from the forensic interview and preliminary examination would refresh her memory. Instead, the prosecution read portions of the forensic interview and preliminary examination to NE in front of the jury. The trial court erred when it permitted the prosecution to continue reading NE's statements from the forensic interview and preliminary examination, which the prosecution concedes.

We also agree with defendant that the trial court erred when it read a jury instruction on prior inconsistent statements to the jury.[3]

---

After the first several questions in which the prosecution read NE's statements from the forensic interview, defendant asked the trial court for a sidebar. The sidebar was not recorded. After this sidebar, the prosecution read from NE's testimony from the preliminary examination transcript. The trial court called for a break and told the prosecutor that she could no longer read from the forensic interview and preliminary examination transcripts, except to the extent that NE made prior inconsistent statements at the preliminary examination. The defendant did not place a specific objection on the record, but the trial court stated that, during the sidebar, the parties discussed the proper way of "using prior statements." It is therefore clear that defense counsel adequately raised and preserved this issue before the trial court.

[3] "We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Everett*, 318 Mich App 511, 528-529; 899 NW2d 94 (2017). An abuse of

Generally, "[t]he use of prior inconsistent statements of a witness is limited at trial to impeachment purposes." *People v Bonner*, 116 Mich App 41, 47; 321 NW2d 835 (1982). Under MRE 801(d)(1), prior inconsistent statements made under oath at a proceeding are defined as nonhearsay and are admissible as substantive evidence. See *People v Malone*, 445 Mich 369, 377-378; 518 NW2d 418 (1994).

Over defendant's objection, during final jury instructions, the trial court read M Crim JI 4.5 on inconsistent statements used to impeach a witness:

> You have heard evidence that before the trial, a witness made statements that may be inconsistent with their testimony here in court. You may consider an inconsistent statement made before the trial only to help you decide how believable the witness' testimony was when testifying here in court. If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the witness said in the earlier statement when determining the facts of this case.

The prosecution requested this instruction on the basis of one inconsistent statement made by NE. As noted, at the preliminary examination, NE testified that defendant pulled down her shorts and underwear, and then NE felt his skin between her buttocks. At trial, NE testified that defendant did not pull down her shorts and underwear. These statements contradict each other.

However, we agree with defendant that a proper foundation was not laid to admit the prior inconsistent statement as substantive evidence. To introduce evidence of a prior inconsistent statement:

> [T]he proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness. [*Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007), citing in part MRE 613(A); *Malone*, 445 Mich at 382-385.]

The prosecutor did not follow this procedure (or anything like it) precisely because the prosecutor was not attempting to impeach NE by introducing a prior inconsistent statement. Rather, the prosecutor was reading excerpts of NE's preliminary examination testimony in an attempt to refresh her collection.

The prosecutor's failure to lay a proper foundation for introduction of the prior inconsistent statement is not mere semantics. This procedure is clearly designed, in part, to highlight for the jury the difference between the witness's current testimony and past statement. Because the prosecutor did not lay a proper foundation, and NE was asked about many prior statements, a reasonable jury would not have been able to discern the single prior inconsistent statement made

---

discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014).

by NE that was admissible as substantive evidence. We therefore agree with defendant that the prosecutor was not entitled to the prior inconsistent statement instruction, M Crim JI 4.5, and that the trial court's instruction caused undue confusion and constituted an abuse of discretion under the circumstances of this case.

The question thus becomes whether the cumulative prejudice of the combined errors warrants reversal. See *People v LeBlanc*, 465 Mich 575, 591-592 n 12; 640 NW2d 246 (2002) ("The term 'cumulative error' refers to cumulative unfair prejudice resulting from several actual errors."); *People v Anderson*, 166 Mich App 455, 472-473; 421 NW2d 200 (1988) ("Although one error in a case may not necessarily provide a basis for reversal, it is possible that the cumulative effect of a number of minor errors may add up to error requiring reversal."). A preserved error justifies reversal if it is more probable than not that it affected the outcome. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

To begin, we acknowledge NE testified that defendant penetrated the crease of her buttocks with his hand, and that this testimony was technically sufficient to convict defendant of CSC-I. In order to establish CSC-I, the prosecution was required to prove that defendant sexually penetrated NE. Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). This Court has held that intrusion into the crease of the buttocks constitutes penetration of the "anal opening." *People v Anderson*, 331 Mich App 552, 561; 953 NW2d 451 (2020). While we are not fully convinced that this was the Legislature's intent, we are bound to follow *Anderson*.

It is clear from the record that the prosecutor was primarily seeking conviction on the basis that defendant penetrated NE with his penis. Indeed, that is the formal charge contained the amended felony information. Once NE did not testify to that effect, however, the prosecutor sought conviction during closing argument on alternative bases, i.e., that defendant penetrated NE either with his penis or fingers:

> And so if you look at the jury instructions, the defendant had to engage in a sexual act that involved entry into [NE's] anal opening by any part of the defendant's body of an object. And it can actually be anal opening or genital opening by any part of his body or an object—so again, any part. And she didn't say which part. We couldn't quite get there with her when she was on the stand, but doesn't matter.

> And you don't even all have to agree. You know, you could have, you know, when she's testifying you can think *if he's on her between*—because she did say—the one thing we did get was between the butt cheeks, the middle. That came out. *And if you think behind with a grown man and his penis and he's getting behind a little girl, if that's going between there, that's enough. It could be that*. It could be his fingers. It could be any other object, actually. It doesn't matter. [Emphasis added.]

In the emphasized statements, the prosecutor was plainly referring to the incident NE described at the forensic interview and preliminary examination regarding defendant getting on top of her and making skin-to-skin contact with a "single thing" going between her buttocks. But it was only through NE's prior statements read into the record by the prosecutor that the jury heard of an incident approximating "a grown man and his penis . . . getting behind a little girl." Thus, while the prosecutor acknowledged that NE "didn't say which part" penetrated her, the prosecutor also strongly suggested to the jury that it could find that defendant committed penile-anal penetration. But this could only be done if the jury relied on the prior statements that were improperly read into the record.

The prosecutor argues that there was no risk of the jury doing so given the instructions. The prosecutor specifically relies on the instruction that the jurors were not to consider statements from the forensic interview as substantive:

> You have heard excerpts from [NE's] and [AE's] statements made to the Child Assessment Center. These statements are not evidence. Only their answers to questions during this trial are evidence.

However, even assuming that the jury was able to discern what statements were made in the context of the forensic interview and followed this instruction, this would still leave NE's testimony from the preliminary examination that was improperly read into the record. As discussed, the jury should not have been instructed on M Crim JI 4.5, given that the jury would not have been able to discern the single statement meeting this criteria when the prosecutor engaged in a lengthy line of questioning that involved reading NE's prior statements and asking if she remembered making them. Perhaps more important, the instruction told the jury that the statements made at the preliminary examination could be considered as substantive evidence since they were made under oath. We cannot conclude that the reading of the preliminary examination testimony was harmless based on a jury instruction that itself was erroneous.

The bottom line is that the prosecution sought to convict defendant of CSC-I on the basis of penile-anal penetration and, to that end, improperly read into the record many prior statements made by NE regarding that alleged incident. During closing argument, the prosecutor continued to suggest that the jury could convict defendant on the basis of penile-anal penetration, even though there was no direct evidence to that effect other than the statements and testimony that were improperly read to the jury. For these reasons, it is not possible to determine whether the jury convicted defendant on the basis of penile-anal penetration or digital-anal penetration. "Where one of two alternative theories of guilt is legally insufficient to support a conviction, and where it is impossible to tell upon which theory the jury relied, the defendant is entitled to a reversal of his conviction and a new trial." *People v Grainger*, 117 Mich App 740, 755; 324 NW2d 762 (1982). Because it is more probable than not that the errors affected the outcome, we conclude that defendant is entitled to a new trial on the CSC-I count.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro